PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

ROBERT M. HOPERICH,                 )
                                     )    CASE NO. 4:16-CV-02590
            Plaintiff,               )
                                     )
      v.                             )    JUDGE BENITA Y. PEARSON
                                     )
AETNA LIFE INSURANCE COMPANY,        )
                                     )
            Defendant.               )    **MEMORANDUM OF OPINION AND**
                                          **ORDER** [Resolving ECF Nos. 14 and 15]


      Plaintiff Robert Hoperich ("Plaintiff") commenced this action under the Employee

Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*., against Defendant

Aetna Life Insurance Company ("Defendant").  Plaintiff challenges the administrator's decision

denying him long term disability benefits.  Pending is Plaintiff's Motion for Judgment on the

Administrative Record.[1]  ECF No. 14.  In response, Defendant has filed a Cross-Motion for

Judgment on the Administrative Record.  ECF No. 15.  For the reasons that follow, Defendant's

Cross-Motion is granted, and Plaintiff's Motion is denied.

## I. Background

      During all relevant times, Plaintiff was employed by Davis-Standard LLC ("Davis-

Standard") as a Regional Sales Manager.  ECF No. 18 at PageID #: 2735.  According to the

Dictionary of Occupational Titles, this is a sedentary occupation.  ECF Nos. 15 at PageID #:

---

      [1]  The Administrative Record is sealed at ECF No. 13.

2669; 13-7 at PageID #: 737; 13-8 at PageID #: 818.  Plaintiff's job duties included technical management of client equipment needs over a significant geographical territory, the supervision of 12 employees, and technical sales of rubber and plastic extrusion equipment.  ECF Nos. 18 at PageID #: 2735; 13-8 at PageID #: 889; 13-9 at PageID #: 975.  Plaintiff had combined earnings of $10,465.79 per month. ECF Nos. 18 at PageID #: 2735; 13-4 at PageID #: 430.

As a Davis-Standard employee, Plaintiff participated in the company's disability coverage plan known as the Group Life and Accident and Health Insurance Policy ("the Plan").  ECF Nos. 18 at PageID #: 2735; 13-1 at PageID #: 102.  The Plan was issued by Defendant, and it included a long term disability ("LTD") coverage titled the "Benefit Plan for Long Term Disability - Non Bargaining Employees."  ECF No. 13-1 at PageID #: 121-53.  The Plan provides a monthly benefit when a participant experiences a "qualifying disability."  *Id*. at PageID #: 127.  The monthly benefit will only be distributed if the claims administrator determines the employee is eligible for benefits.  *Id*.  Defendant was the sole administrator and payor of the Plan.  ECF Nos. 18 at PageID #: 2735.

**A.  The Plan**

The Plan provides specific definitions for key terms.  "Qualifying disability" is defined by:

> **Test of Disability**
> From the date that you first became disabled and until monthly benefits are payable for 24 months you meet the test of disability on any day that:
> • You cannot perform the material duties of your own occupation solely because of an illness, injury or disabling pregnancy-related condition; and
> • Your earnings are 80% or less of your adjusted predisability earnings.

> After the first 24 months of your disability that monthly benefits are payable, you meet the plan's test of disability on any day you are unable to work at any reasonable occupation solely because of an illness, injury or disabling pregnancy-related condition.

ECF No. 13-1 at PageID #: 128.

"Own occupation" is defined as:

> **Own Occupation**
> The occupation that you are routinely performing when your period of disability begins. Your occupation will be viewed as it is normally performed in the national economy instead of how it is performed:
> •     For your specific employer;
> •     At your location or work site; and
> •     Without regard to your specific reporting relationship.

*Id*. at PageID #: 144.

Any "reasonable occupation" is defined as:

> **Reasonable Occupation**
> This is any gainful activity:
> •     For which you are, or may reasonably become, fitted by education, training, or experience; and
> •     Which results in, or can be expected to result in, an income of more than 80% of your adjusted predisability earnings.

*Id*. at PageID #: 145.

The Plan also proscribes numerous scenarios for the termination of a claimant's LTD benefit eligibility. *Id*. at PageID #: 128. Specifically:

> **When Long Term Disability Benefit Eligibility Ends**
> You will no longer be considered as disabled nor eligible for long term monthly benefits when the first of the following occurs:
> •     No longer meet the LTD test of disability, as determined by Aetna.
> •     The date you are no longer under the regular care of a physician.
> •     ...
> •     The date you fail to provide proof that you meet the LTD test of disability.

      •     The date an independent medical exam report or functional capacity evaluation does not, in Aetna's opinion, confirm that you are disabled.

      •     ...

      •     The date you are not receiving effective treatment for alcoholism or drug abuse, if your disability is caused (in whole or part) by alcoholism or drug abuse.

      •     ...

*Id.*

The Plan also contains a 24-Month drug and alcohol abuse limitation which states:

**Limitations Which Apply to Long Term Disability Coverage**
You will no longer be considered as disabled and eligible for long term monthly benefits after benefits have been payable for 24 months if it is determined that your disability is primarily caused by:

      •     A mental health or psychiatric condition, including physical manifestations of these conditions, but excluding conditions with demonstrable, structural brain damages; or

      •     Alcohol and/or drug abuse.

*Id.* at PageID #: 129.

## B. Plaintiff's Claim for Long Term Disability Benefits, Generally

On October 17, 2011, Plaintiff left work due to alleged medical conditions of: essential tremor, chronic fatigue syndrome ("CFS"), Epstein-Barr Virus, spinal stenosis, cervical disc displacement, fibromyalgia, ADHD, depression, irritable bowel syndrome, dizziness, and lower back pain. ECF Nos. 14 at PageID #: 2645; 13-4 at PageID #: 422-23.

Plaintiff then applied for LTD benefits with Defendant under the Plan's "own occupation" provision, which was denied on August 23, 2012. ECF Nos. 14 at PageID #: 2656; 13-10 at PageID #: 1051-53. Plaintiff appealed, which was denied on June 13, 2013. ECF Nos. 14 at PageID #: 2656; 13-4 at PageID #: 422-23.

(4:16CV02590)

Plaintiff then filed a lawsuit in this Court, which eventually settled in mediation.[2] *See*

*Hoperich v. Aetna Life Insurance Company*, No. 4:13CV02429 (N.D. Ohio Mar. 04, 2015). A

formal Settlement Agreement and Release was executed by Plaintiff on or about February 6,

2015. *Id*. As a result, Defendant approved Plaintiff's LTD claim under the Plan's "own

occupation"[3] definition of disability from April 14, 2012 until April 13, 2014. ECF No. 13-5 at

PageID #: 564. However, if Plaintiff were still disabled and hoped to continue receiving benefits

after April 14, 2014 - the initial 24 month LTD period, Plaintiff must then meet the more strict

"any reasonable occupation" definition of disability. *Id*. at PageID #: 565. If Plaintiff qualifies

for the continuation of benefits under the "any reasonable occupation" standard, Defendant may

periodically review Plaintiff's eligibility by requesting updated medical information from

Plaintiff's medical providers, independent physicians of Defendant's choice, or vocational

specialists. *Id*.

On October 27, 2015 Defendant issued a denial of further benefits letter to Plaintiff. ECF
No. 18 at PageID #: 2736. Plaintiff appealed Defendant's decision on April 21, 2016. *Id.*

---

[2] Plaintiff asks the Court to take judicial notice of the prior lawsuit because it is not a part of the Administrative record. ECF No. 14 at PageID #: 2646.

[3] As stated above, the Plan provides that a claimant meets the test of disability on any day that he or she "cannot perform the material duties of your own occupation solely because of an illness, injury, or disabling pregnancy-related condition." ECF Nos. 16 at PageID #2691; 13-1 at PageID #: 128.

5

(4:16CV02590)

**1. Independent Medical Evaluation**

On July 9, 2015, Defendant informed Plaintiff that an Independent Medical Examination ("IME") was required to further evaluate whether Plaintiff is entitled to further LTD benefits. ECF Nos. 16 at PageID #: 2693; 13-5 at PageID #: 591. The IME was conducted by Dr. Angelo Constantino, who also prepared the accompanying IME report and the Capabilities and Limitations Worksheet ("CLW"). ECF Nos. 16 at PageID #: 2693; 13-5 at PageID #: 462-73. Dr. Constantino is a licensed medical doctor. *Id.* He is also a board-certified specialist in occupational medicine, internal medicine, and independent medical examinations. *Id.*

As a part of the IME, Dr. Constantino conducted a 60-minute face-to-face interview with Plaintiff, and performed a "thorough review of medical records including dates of visits, treating provider names, clinical details of each visit to include initial presenting symptoms, physical finders, and testing diagnoses, progression of symptoms and physical findings from initial presentation to recent records.". ECF Nos. 16 at PageID #: 2693-94; 13-5 at PageID #: 462.

After conducting the IME, Dr. Constantino reported that there were no "current restrictions or limitations with clinical rationale which would preclude claimant from performing physical activities." ECF Nos. 16 at PageID #: 2696; 13-5 at PageID #: 469. Dr. Constantino also stated that "[b]ased on my review [sic] the medical history of the claimant's medical conditions and treatments, the examinee's estimated functional abilities, including appropriate restrictions & limitations include moderate level activities, allowing lifting not more than 20 pounds at a time and frequent carrying of objects weighing up to 10 pounds." ECF Nos. 16 at

PageID #: 2693; 13-5 at PageID #: 466. "The highest level of functional capacity this examinee is reasonably capable should allow for 40 hour [sic] per week and 8 hours per day." *Id.* Dr. Constantino concluded the IME report by stating "the appropriate question would be whether the objective 'impairment' Mr. Hoperich... has is causing permanent and total disability, whereby the answer is clearly no." ECF No. 13-5 at PageID #: 466. Based on the IME, Defendant notified Plaintiff on July 30, 2015 that he may return to work "in up to a light level occupation on a full time basis." *Id*. at PageID #: 477.

## 2. Transferable Skills Analysis

On July 24, 2015, a Transferable Skills Analysis ("TSA") report was prepared by a non-party named Coventry Health Care ("Coventry"). ECF No. 13-8 at PageID #: 817-20. In preparing the TSA, Coventry considered the IME, the CLW, the Work History Employment Questionnaire ("WHEQ") completed by Plaintiff, as well as other documents. *Id*. at PageID #: 889-91. The TSA determined that Plaintiff's former occupation of a regional sales manager was a sedentary occupation and not a medium duty occupation. ECF No. 13-4 at PageID #: 487. On July 27, 2015, Defendant noted in its claim notes that according to the Dictionary of Occupation Titles, Plaintiff's "own occupation" was classified as sedentary. ECF No. 13-16 at PageID #: 1649. In accordance with these definitions, the TSA identified three potential occupations for Plaintiff that are consistent with his transferable skills, functional abilities, and reasonable wage. ECF Nos. 15 at PageID #: 2682; 13-7 at PageID #: 738-39.

## 3. Functional Capacity Evaluations

Plaintiff submitted two separate Functional Capacity Exams ("FCE") in support of his LTD benefits claim. ECF No. 14 at PageID #: 2657. The first FCE was conducted on February

5, 2013.  ECF No. 13-5 at PageID #: 663-68.  The second FCE was conducted on February 12, 2016.  *Id*. at PageID #: 669-74.  Both FCEs reported that Plaintiff had a limited tolerance for physical activity.  ECF Nos. 16 at PageID #: 2706; 13-6 at PageID #: 641.  Findings from both FCEs were based on Plaintiff's own reports of pain.  *Id.*

### 4.  Denial of Further Benefits - Defendant's Oct 27, 2015 Letter

On October 27, 2015, Defendant issued a letter denying Plaintiff further benefits starting on April 14, 2014.  ECF Nos. 14 at PageID #: 2647; 13-4 at PageID #: 486-89.  In the letter, Defendant stated that after reviewing the claim, Defendant found that Plaintiff is able to return to work in his own occupation as of April 15, 2014, and any further LTD benefits would not be granted.  *Id.*  Plaintiff then appealed.  ECF Nos. 14 at PageID #: 2647.

### 5.  Peer Reviews

Following Plaintiff's appeal, on June 3, 2016 a peer review was conducted by Dr. Daniel Stein, a board certified neurologist.  ECF No. 13-6 at PageID #: 641-45.  In the peer review, Dr. Stein evaluated Plaintiff's records, including the IME, the TSA, Plaintiff's drug history; medical records from Plaintiff's primary care physician, Dr. Richard Fawcett, the Attending Physician Statement ("APS") from Dr. Fawcett, neurological evaluations from Dr. Daniel Koontz and Dr. Nimish Thakore, and correspondence with Plaintiff's attorney.  *Id*.

On June 1, 2016 Dr. Stein conducted a peer-to-peer consultation with Dr. Fawcett.  *Id*.  In the consultation, Dr. Fawcett indicated that Plaintiff was discharged from Dr. Fawcett's practice in August of 2015 due to police actions related to possession of illegal substances.  *Id*.  Dr. Fawcett also indicated that it was possible that Plaintiff's substance abuse caused his fatigue

related symptoms, and his tremor could be exacerbated by stimulant use. *Id*. When asked about Plaintiff's CFS, Dr. Fawcett referred to the Epstein-Barr Virus testing, but reported that no formal neurocognitive or other neuropsychological testing was performed through his office, nor was there a rheumatologic evaluation performed to confirm the diagnosis of chronic fatigue. *Id*.

Dr. Stein's peer review concluded that he was "unable to find any clinical correlation, which would support a functional impairment for the period 10/11/11 through 7/31/16." *Id*. at PageID #: 644. Furthermore, "other than the psychiatric manifestations of chronic pain, opioid addiction and stimulant use disorder the claimant does not have clinical evidence of functional impairment for the period in question." *Id*. at PageID #: 645.

On July 18, 2016, Dr. Nimish Thakore, one of Plaintiff's former treating neurologists, stated in a note to Defendant that he is in full agreement with Dr. Stein's assessment after reviewing Dr. Stein's Peer Review report. ECF Nos. 16 at PageID #: 2708; 13-6 at PageID #: 640.

### 6. Drug Related Issues

The record shows that Plaintiff has a history of drug related issues. As a part of its review process, Defendant conducted a background investigation on Plaintiff. The investigation revealed that Plaintiff was arrested on August 20, 2015 for unlawful possession of drugs. ECF Nos. 16 at PageID #: 2700; 13-7 at PageID #: 748-51, 789-800. Plaintiff was charged with various drug related crimes, including unlawful possession drugs, possession of drug paraphernalia, and permitting drug use. *Id.*

9

Dr. Stein's peer review also pointed to numerous drug related issues. In his report, Dr. Stein noted that Plaintiff suffers from opioid addiction, and his pharmaceutical dispensing records indicate that he was potentially overfilling prescriptions for large numbers of stimulants beginning in 2010. ECF Nos. 15 at PageID #: 2671-72; 13-6 at PageID #: 643. As discussed above, Plaintiff was discharged from Dr. Fawcett's practice due to drug and police related issues. ECF No. 13-6 at PageID #: 644. Dr. Fawcett also stated that Plaintiff's alleged conditions could be caused by his substance abuse. *Id.* Defendant later cites to Plaintiff's drug history in its decision to deny further LTD benefits. ECF No. 15 at PageID #: 2684.

**7. Denial of Plaintiff's Appeal - Defendant's August 1, 2016 Letter**

On August 1, 2016, Defendant issued a letter which notified Plaintiff that his appeal was denied. *Id.* Defendant reached this decision after reviewing Plaintiff's records, including the terms of the Plan, the IME, the FCEs, the TSA, and Dr. Stein's peer review. *Id.*

**8. Posture of Case at Bar**

Plaintiff filed  this action on September 21, 2016 in Columbiana County, Ohio Court of Common Pleas. The matter was removed on October 24, 2016 under federal question jurisdiction (ECF No. 1). Plaintiff filed the Motion for Judgment on the Administrative Record (ECF No. 14) seeking to overturn Defendant's denial of Plaintiff's LTD claim on the ground that Defendant's decision was arbitrary and capricious. ECF No. 14 at PageID #: 2659. Defendant filed a Response to Plaintiff's motion and Cross-Motion for Judgment on the Administrative Record (ECF No. 15). The matter is ripe for adjudication.

**II. Legal Standard**

When an ERISA plan gives the plan administrator discretion in interpreting its terms or making benefits determinations, a court reviews the administrator's decision under the deferential arbitrary and capricious standard of review. *Farhner v. United Transp. Union Discipline Income Prot. Program*, 645 F.3d 338, 342 (6th Cir. 2011); *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609, 613 (6th Cir. 1998). Under the arbitrary and capricious standard of review, the court must uphold the administrator's decision if the administrator's interpretation of the plan's provisions is "reasonable" or "rational." *Price v. Bd. of Tr. of Ind. Laborer's Pension Fund*, 632 F.3d 288, 295 (6th Cir. 2011) (quoting *Kovach v. Zurich Am. Ins. Co.*, 587 F.3d 323, 328 (6th Cir. 2009)); *Schwalm v. Guardian Life Ins. Co. of Am.*, 626 F.3d 299, 308 (6th Cir. 2010). The court "review[s] not only the insurer's conclusion, but also its reasoning." *Metro. Life Ins. Co. v. Conger*, 474 F.3d 258, 265 (6th Cir. 2007).

In reviewing the decision of the plan administrator, the Court may only consider the evidence in the administrative record, as that is the evidence that the plan administrator considered. *Wilkins*, 150 F.3d at 615. This standard of review does not require courts to "rubber stamp[]" a plan administrator's decision, however. *Schwalm*, 626 F.3d at 308. "A court must review the quantity and quality of the medical evidence on each side." *Id.* (quoting *Evans v. UnumProvident Corp.*, 434 F.3d 866, 876 (6th Cir. 2006)). The decision must be upheld if it results from "a deliberate principled reasoning process" and is supported by "substantial evidence." *Id.* (quoting *Baker v. United Mine Workers of Am. Health & Ret. Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991)). Plaintiff bears the burden of proving the plan administrator's decision was arbitrary and capricious. *Farhner*, 645 F.3d at 343.

(4:16CV02590)

III. Analysis

## A. Preliminary Matter

As a preliminary matter, the Court must resolve the parties' disagreement as to which standard should apply. *See* ECF No. 19 at PageID #: 2746. Plaintiff initially admitted to the arbitrary and capricious standard in his Motion for Judgment on the Administrative Record. ECF No. 14 at PageID #: 2658. Confusingly, Plaintiff then argued for a *de novo* standard of review in his reply brief by asserting a conflict of interest argument. ECF No. 17 at PageID #: 2731.

Plaintiff's argument fails. In an ERISA disability benefit action, the potential existence of a conflict of interest is only one factor to be considered. *Metro Life Ins. Co. v. Glenn*, 554 U.S. 105, 115 (2008). The fact that a conflict of interest exists does not by itself change the standard of review. *Id.* It follows that the conflict of interest inherent in self-funded plans does not alter the standard of review, but rather is taken into account as a factor in determining whether the decision was arbitrary and capricious. *Peruzzi v. Summa Medical Plan,* 137 F.3d 431, 433 (6th Cir.1998). Mere allegations of the existence of a conflict of interest are not enough to show that the denial of a claim was arbitrary; there must be some evidence that the alleged conflict of interest affected the plan administrator's decision to deny benefits. *Id.*

In this case, Plaintiff fails to produce evidence to show that Defendant's decision was affected by a conflict of interest. It is well settled that the arbitrary and capricious standard applies in ERISA cases in which the Plan provides that the fiduciary has the discretionary authority to construe the Plan's terms or determine benefit eligibility. *Farhner*, 645 F.3d at 342. Here, the Plan explicitly states that Defendant has the discretion to deny LTD benefits if it

12

(4:16CV02590)

determines that Plaintiff is not disabled under the Plan's terms.  ECF Nos. 15 at PageID #: 2676;

13-1 at PageID #: 129.

As such, the Court finds that the arbitrary and capricious standard applies.  Under this

standard, Plaintiff has the burden of proving that Defendant's decision was arbitrary and

capricious.  *Farhner*, 645 F.3d at 343.

**B.  Parties' Cross Motions**

At the crux of this matter are the different conclusions drawn by the parties as to whether

Plaintiff's conditions constituted a "qualifying disability" under the Plan's "any reasonable

occupation" standard beyond April 14, 2014.  *See* ECF Nos. 14 at PageID #: 2646-47; 13-4 at

PageID #: 486-89.  Defendant approved Plaintiff's LTD claim under the Plan's "own

occupation" standard from April 14, 2012 to April 13, 2014.  *Id.*  Plaintiff then applied for

further benefits under the Plan's more strict "any reasonable occupation" standard.  *Id.*  He was

denied.  *Id.*  Plaintiff contends that he is entitled to further LTD benefits because his numerous

medical conditions preclude him from returning to work.  ECF No. 14 at PageID #: 2654-57.

After conducting multiple reviews of Plaintiff's on-going clinical records and consultations with

Plaintiff's treating physicians, Defendant found no objective evidence to substantiate Plaintiff's

continued eligibility for benefits under the Plan and terminated Plaintiff's LTD benefits.  ECF

Nos. 16 at PageID #: 2700; 13-4 at PageID #: 486-89.

(4:16CV02590)

Now, Plaintiff challenges Defendant's decision on the grounds that it was arbitrary and capricious. ECF No. 14. To meet his burden of proof under the arbitrary and capricious standard of review, Plaintiff makes numerous arguments the Court addresses below.

**1. Defendant's Reliance on Consulting Physicians**

Plaintiff contends that Defendant's decision was arbitrary and capricious because Defendant failed to fairly review Plaintiff's claim due to an over reliance upon the IME and the peer reviews. *See* ECF No. 14. The Court disagrees.

"ERISA was enacted to promote the interests of employees and their beneficiaries in employee benefit plans, and to protect contractually defined benefits." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113 (1989) (internal quotation marks and citations omitted). "The Act furthers these aims in part by regulating the manner in which plans process benefits claims." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 830 (2003). Plans must "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant." 29 U.S.C. § 1133(1).

Plan procedures must "afford a reasonable opportunity ... for a full and fair review" of dispositions adverse to the claimant. 29 U.S.C. § 1133(2). "Nothing in the Act itself, however, suggests that plan administrators must accord special deference to the opinions of treating physicians. Nor does the Act impose a heightened burden of explanation on administrators when they reject a treating physician's opinion." *Black & Decker Disability Plan*, 538 U.S. at 831.

14

Plan administrators may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician. *Id*. at 834. However, "courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." *Id.*

Moreover, "the assumption that the opinions of a treating physician warrant greater credit than the opinions of plan consultants may make scant sense" when a specialist engaged by the plan has expertise the treating physician lacks. *Id*. at 832. "If a consultant engaged by a plan may have an 'incentive' to make a finding of 'not disabled,' so a treating physician, in a close case, may favor a finding of 'disabled.'" *Id.*

Focusing on the case at bar, central to the Court's consideration is whether Defendant reasonably considered all pertinent evidence from both parties in reaching its decision. This includes records from both the consulting physicians and Plaintiff's treating physician. In Defendant's October 27, 2015 and August 1, 2016 letters to Plaintiff, Defendant explained its reasons in crediting the peer reviewers' opinions rather than Plaintiff's former treating physician. ECF Nos. 13-4 at PageID #: 486-89; 13-5 at PageID #: 501-04.

In the October 27, 2015 letter, Defendant noted that an "Aetna physician consultant within Aetna's Long Term Disability unit reviewed Dr. Fawcett's response and concluded that 'in reviewing the provider's restrictions, no impairment to the amount of lifting is clinically supported for chronic fatigue syndrome. The frequency may be impacted, although periodic

breaks would account for that. Sitting would not appear to be impacted by diagnosis. There is no clinical support for impairment to the amount of lifting'." ECF No. 13-4 at PageID #: 487. In the August 1, 2016 letter, Defendant stated that "there was no other clinical correlation in the medical records provided to a functional impairment." ECF No. 13-5 at PageID #: 502. These letters demonstrate that Defendant provided rational and reasonable explanations for its reliance upon the consulting physicians' medical opinion rather than Plaintiff's treating physician.

Also, the Court finds that Defendant's reliance on the consulting physicians is reasonable because they are both specialists. Dr. Constantino is board certified in occupational medicine, internal medicine, and a board certified medical examiner. ECF No. 13-4 at PageID #: 462-73. Dr. Stein is a board certified neurologist. ECF No. 13-5 at PageID #: 641-45. Whereas Dr. Fawcett, Plaintiff's treating physician, is not a board certified specialist. ECF No. 13-17 at PageID #: 1723. Therefore, Defendant's reliance upon the medical opinions of both specialists in its decision making is not arbitrary and capricious.

### 2. Defendant's Decision

The Court has "an obligation under ERISA to review the administrative record in order to determine whether the plan administrator acted arbitrarily and capriciously in making ERISA benefits determinations." *McDonald v. W.-S. Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003). "This obligation inherently includes some review of the quality and quantity of the medical evidence and the opinions on both sides of the issues. Otherwise, courts would be rendered to mere rubber stamps for any plan administrator's decision as long as the plan was able to find a

single piece of evidence – no matter how obscure or untrustworthy – to support a denial of a claim for ERISA benefits." *Id.* Although "the standard is not without some teeth, it is not all teeth." *McClain v. Eaton Corp. Disability Plan*, 740 F.3d 1059, 1064 (6thCir. 2014) (an "extremely deferential review" must actually honor an "extreme" level of deference to the administrative decision).

Generally, "the validity of a claim to benefits under an ERISA plan is likely to turn on the interpretation of terms in the plan at issue." *Firestone Tire and Rubber Co.*, 489 U.S. at 115. In this case, Defendant argues that its decision was based on multiple reviews of the IME, the FCE, the TSA, multiple peer reviews, and other relevant records. ECF No. 15 at PageID #: 2665. This is supported by the Plan, which expressly states that a claimant will no longer be considered disabled on "the date an independent medical exam report or functional capacity evaluation does not, in Aetna's opinion, confirm that you are disabled." ECF No. 13-1 at PageID #: 129. Accordingly, Defendant's decision was not arbitrary and capricious because Defendant acted within the Plan's proscribed terms. ECF No. 15 at PageID #: 2677. The Court will specifically discuss the IME, the FCEs, and the peer review.

### i. Independent Medical Evaluation

In an ERISA action, the decision maker may deny a LTD benefits claim by relying on an IME. *See Wilkins*, 150 F.3d at 612, 614. In this case, Defendant's relied upon Dr. Constantino's IME in reaching its decision to deny Plaintiff further LTD benefits. ECF No. 15 at PageID #: 2677.

The IME was conducted by Dr. Constantino, who is a board certified specialist in occupational medicine, internal medicine, and independent medical examinations. ECF Nos. 16 at PageID #: 2693; 13-4 at PageID #: 462. During the IME, Dr. Constantino conducted a 60-minute face-to-face interview with Plaintiff, and performed a "thorough review of medical records including dates of visits, treating provider names, clinical details of each visit to include initial presenting symptoms, physical finders, and testing diagnoses, progression of symptoms and physical findings from initial presentation to recent records." *Id.*

After the IME, Dr. Constantino reported that there were no "current restrictions or limitations with clinical rationale which would preclude claimant from performing physical activities." ECF No. 13-4 at PageID #: 469. Dr. Constantino also stated that "[b]ased on my review the medical history of the claimant's medical condition and treatments, the examinee's estimated functional abilities, including appropriate restrictions & limitations include moderate level activities, allowing lifting not more than 20 pounds at a time and frequent carrying of objects weighing up to 10 pounds." *Id.* at PageID #: 466. Additionally, "the highest level of functional capacity this examinee is reasonably capable should allow for 40 hour [sic] per week and 8 hours per day." *Id.* Finally, Dr. Constantino concluded that "the appropriate question would be "whether the objective 'impairment' Mr. Hoperich... has is causing permanent and total disability, whereby the answer is clearly no." *Id.* at PageID #: 469.

As such, the Court finds that Defendant's reliance on the IME is proper and its resultant decision is reasonably based on the unambiguous findings of the IME.

(4:16CV02590)

### ii. Functional Capacity Evaluations (FCE)

Plaintiff contends that Defendant failed to fairly consider the FCEs.  ECF No. 17 at

PageID #: 2727.  However, the record shows that Defendant fully reviewed the FCEs before

making its decision.  ECF Nos. 15 at PageID #: 2674; 13-5 at PageID #: 501.  In the August 1,

2016 denial letter, Defendant stated that:

> "We then evaluated a Functional Capacity Test from [sic] dated
> February 12, 2016.  It revealed a medical opinion that your client
> could not tolerate prolonged postures due to pain. Your client was
> able to perform most of the tasks requested for at least a brief
> period of time.  Overall it appears that your client was able to
> function while standing in a a [sic] seated position."

*Id*.

### iii. Peer Reviews

On October 27, 2015 Defendant notified Plaintiff that his claim for further benefits was

denied.  ECF Nos. 14 at PageID #: 2647; 13-4 at PageID #: 486-89.  In its letter, Defendant stated

that after reviewing Plaintiff's claim, Defendant finds that Plaintiff is able to return to work in his

own occupation as of April 15, 2014, which means that further LTD benefits would not be

granted.  *Id*.

Following Plaintiff's appeal, Dr. Daniel Stein, a board certified neurologist conducted a

peer review on June 3, 2016.  ECF No. 13-6 at PageID #: 641-45.  In the peer review, Dr. Stein

reviewed Plaintiff's records, including the IME, correspondence with Plaintiff's attorney, the

TSA, an Investigative Report from Summit Investigations, Inc., correspondence to Plaintiff's

treating physicians, Dr. Fawcett's Attending Physician Statement ("APS"), and prior peer reviews. *Id.*

Dr. Stein then reported that "review of office notes from the physicians detailed above revealed that aside from tremor, and Plaintiff's neurological exam, muscle strength, gait, and mental status were all normal." *Id.* at PageID #: 644-45. Dr. Stein also concluded that he was "unable to find any clinical correlation, which would support a functional impairment for the period 10/11/11 through 7/31/16." *Id.* Furthermore, "other than the psychiatric manifestations of chronic pain, opioid addiction and stimulant use disorder the claimant does not have clinical evidence of functional impairment for the period in question." *Id.* Dr. Stein's assessment was then affirmed by Plaintiff's former treating neurologist, Dr. Thakore. *Id.* Plaintiff's appeal for further benefits was then denied on August 1, 2016. ECF Nos. 16 at PageID #: 2708; 13-5 at PageID #: 501-04.

### 3. Review of Defendant's Decision

The Plan provides that LTD benefits terminate the date that Plaintiff fails "to provide proof that you meet the LTD test of disability." ECF Nos. 15 at PageID #: 2678; 13-1 at PageID #: 129. Defendant may base its decision on opinions of consulting physicians and IMEs. *Id.* Here, again, records clearly demonstrate that Defendant reached its decision after multiple reviews of relevant records, including the IME, the FCEs, the TSA, and the peer review.

Alternatively, Plaintiff failed to provide objective evidence showing that he was actually disabled pursuant to the Plan's heightened "any reasonable occupation" standard. Plaintiff

primarily rely upon Dr. Fawcett's APS and the two FCEs.  ECF No. 14 at PageID #: 2657.

However, neither the APS nor the FCEs conclusively establish that Plaintiff is actually disabled

because they are both largely based upon Plaintiff's self-reports of pain.  *Id.*  Drs. Constantino

and Stein both opined that there were no objective tests to show that Plaintiff was actually

disabled.  *Id.*  Moreover, Dr. Stein's peer review was also affirmed by Dr. Thakore, Plaintiff's

previous treating neurologist.  *Id.*

Therefore, Plaintiff failed to meet his burden to demonstrate that Defendant's decision

was arbitrary and capricious.  The Court finds that Defendant's decision was reasonable and

supported by convincing evidence.

## C.  Plaintiff's Drug Use

Defendant contends that Plaintiff's history of drug use would also preclude him from

further LTD benefits.  ECF No. 15 at PageID #: 2684.  A Plan administrator may restrict Long

Term Disability benefits based on opioid use.  *Blount v. United of Omaha Life Ins. Co.*, No. 16-

6372, 2017 WL 2829102, at *1 (6th Cir. June 30, 2017) (it was neither arbitrary nor capricious

for defendant to invoke the discussed Plan's 24-month substance abuse limitation once it

determined that plaintiff's disability was due to her opioid regimen).  Additionally, a denial of

benefits is appropriate if it is based on a "reasoned conclusion, supported by substantial evidence,

that the specific pattern of disabling narcotic use meets the definition of abuse under the

plan." *Blount v. United of Omaha Life Ins. Co.*, No. 3:15-CV-00876, 2016 WL 4191725, at *8

(M.D. Tenn. Aug. 8, 2016), *aff'd*, No. 16-6372, 2017 WL 2829102 (6th Cir. June 30, 2017).

Under the Plan's 24-month limitation, a claimants is barred from further benefits if he were not receiving effective treatment for drug abuse. ECF No. 13-1 at PageID #: 130. Specifically:

> **Limitations Which Apply to Long Term Disability Coverage**
> You will no longer be considered as disabled and eligible for long term monthly benefits after benefits have been payable for 24 months if it is determined that your disability is primarily caused by:
> •     A mental health or psychiatric condition, including physical manifestations of these conditions, but excluding conditions with demonstrable, structural brain damages; or
> •     Alcohol and/or drug abuse.

*Id.*

Although it has not been conclusively established that Plaintiff's disability is primarily caused by drug abuse, evidence suggests that there may be some correlation. *See* ECF No. 15 at PageID #: 2684. Dr. Stein opined in his peer review that Plaintiff suffers from opioid addiction, and his pharmaceutical dispensing records indicate that Plaintiff was potentially overfilling prescriptions for large numbers of stimulants beginning in 2010. *Id.* at PageID #: 2671-72. Dr. Stein also stated that "other than the psychiatric manifestations of chronic pain, opioid addiction [sic] and stimulant use disorder the claimant does not have clinical evidence of functional impairment for the period in question." ECF No. 13-6 at PageID #: 645.

Dr. Stein's peer review assessment was affirmed by both Drs. Fawcett and Thakore. *Id.* at PageID #: 644. Specifically, Dr. Fawcett indicated that Plaintiff's conditions could be related to his opioid and stimulant use. *Id.* In fact, Plaintiff was discharged from Dr. Fawcett's practice in August of 2015 due to police actions related to possession of illegal substances. *Id.* This discharge corroborates Defendant's background investigation, which revealed that Plaintiff was

22

arrested on August 20, 2015 for unlawful possession of drugs.  ECF No. 16 at PageID #: 2700.

Specifically, Plaintiff was charged with unlawful possession of dangerous ordinance, possession

of a drug, forfeiture specification, possession of drug paraphernalia, and permitting drug use.  *Id.*

While Plaintiff denies that his disability is related to any drug use, he does not produce

any affirmative evidence showing that his drug use is wholly unrelated to his disability.  ECF No.

17 at PageID #: 2730.  Nonetheless, evidence of Plaintiff's drug use is suggestive.  As such, it is

reasonable for Defendant to weigh Plaintiff's drug use in its final decision.  Thus, Defendant's

argument that Plaintiff would be barred from receiving benefits under the Plan's 24-month drug

abuse limitation is not without merit.

## IV.  Conclusion

The Court concludes that Defendant did not act arbitrarily and capriciously in its decision

to deny Plaintiff further long term disability benefits under the Plan.  Accordingly, Plaintiff's

Motion for Judgment on the Administrative Record (ECF No. 14) is denied.  Defendant's Motion

for Judgment on the Administrative Record (ECF No. 15) is granted.

IT IS SO ORDERED.

September 25, 2017          _/s/ Benita Y. Pearson_
Date                        Benita Y. Pearson
                            United States District Judge

23